RECEIVED
DEC - 5 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| DEBRA LOVELL O/B/O A.R.W. | * | CIVIL ACTION NO. 04-1445 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Debra Lovell filed an application for supplemental security income (SSI) on August 26, 2002, on behalf of her daughter, A.R.W., born July 20, 2000, based on developmental delays and neurofibromatosis, with an onset date of June 18, 2002.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from Teche Regional Medical Center dated March 5, 2002 to June 5, 2002.** On June 3, 2002, claimant's mother complained that claimant was losing weight and had a poor appetite. (Tr. 91, 93). Lab studies revealed a low serum iron. (Tr. 91). Dr. Anthony J. Saleme's diagnosis was nutritional anemia and overall nutritional deficiency. (Tr. 90-92).

**(2) Consultative Examination by Dr. Sarah U. Laurente dated January 26, 2003.** Claimant's chief complaints were developmental delay and iron deficiency. (Tr. 109). On examination, her height was 34 1/4 cm (25th percentile), her weight was 26 pounds (25th percentile) and her head circumference was 48.5 cm (50th percentile). (Tr. 110). Dr. Laurente noted multiple café au lait spots. The Denver II showed 3 delays and 3 cautions.

Dr. Laurente's assessment was that claimant had developmental delays, mainly in the gross motor and personal-social skills. She noted that claimant would most likely benefit if she were in the early Headstart program. She observed that claimant had multiple café au lait spots, which could indicate a neurocutaneous dysplasia.

**(3) Childhood Disability Evaluation Form dated February 5, 2003.** Dr. Glenn Gibson assessed claimant for mild developmental delay. (Tr. 113). He found that she had no limitation as to acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and

2

manipulating objects, and caring for herself. (Tr. 116-17). She had a less than marked limitation as to health and physical well-being. (Tr. 117). Dr. Gibson noted that claimant had gained and maintained her weight and was showing good progress since being placed in another setting.

**(4) Report from Dr. Duane W. Superneau dated February 27, 2003.**

Claimant was brought for evaluation of possible neurofibromatosis.[1] (Tr. 119). On examination, she had multiple café au lait spots on the skin and hairy patches. (Tr. 120). Dr. Superneau's assessment was neurofibromatosis Type I. He stated that claimant should be checked for the emergence of neurofibromas. He noted that special attention should be paid to the hairy patches, as these were sometimes "herald

---

[1] Under this heading are grouped two distinct hereditary disorders, formerly labeled peripheral and central neurofibromatosis, but now entitled neurofibromatosis type 1 and type 2. Type 1 (peripheral) neurofibromatosis, [MIM*162200] by far the most common of the two types, is characterized clinically by the combination of patches of hyperpigmentation and cutaneous and subcutaneous tumors. The hyperpigmented skin areas, present from birth and found anywhere on the body surface, can vary markedly in size and color—the dark brown ones are called café-au-lait spots. The multiple cutaneous and subcutaneous tumors, nerve sheath neoplasms, called neurofibromas, can develop anywhere along the peripheral nerve fibers, from the roots distally. Neurofibromas can become quite large, causing a major disfigurement, eroding bone, and compressing various peripheral nerve structures; a small hamartoma (Lisch nodule) can be found in the iris of almost all patients. Type 1 neurofibromatosis, also called von Recklinghausen disease, has autosomal dominant inheritance, with the gene locus on chromosome 17q11, and is caused by mutation in the NF1 gene that encodes neurofibromin. Type 2 (central) neurofibromatosis [MIM*101000] has few cutaneous manifestations, and consists primarily of bilateral (less often, unilateral) acoustic neuromas, causing deafness, often accompanied by other intracranial and paraspinal neoplasms, such as meningiomas and gliomas. Type 2 neurofibromatosis also has autosomal dominant inheritance, but the gene locus is on 22q11, caused by mutation in the NF2 gene encoding the product merlin. SYN elephant man's disease (2). STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000).

spots for underlying plexiform neurofibromas" which could be more extensive and difficult to manage.

Dr. Superneau stated that neurodevelopmental difficulties occurred in half of the patients with neurofibromatosis. He noted that a quarter of these patients had a significant degree of impairment which interfered with keeping up with children their age. He opined that claimant should continue with intervention services as established.

**(5) Records of Dr. Thompson dated May 6, 2002 to February 10, 2004.**[2] During this period, Dr. Thompson saw claimant for tonsillitis, diarrhea, vomiting and lack of energy, coughing and nasal congestion, pink eye, colds, fever, and neurofibromatosis. (Tr. 121-27).

**(6) Medical Source Statement of Ability to Do Work-Related Activities dated February 19, 2004.**[3] The examiner noted that claimant's ability to lift/carry, stand/walk, sit, and push/pull were not affected by her impairment. (Tr. 128-29). She had no postural, manipulative, or visual/communicative limitations. (Tr. 129-30). However, because of allergic rhinitis, the examiner determined that she should avoid

---

[2]Claimant argues that the ALJ introduced the following records post-hearing without notifying her. (rec. doc. 10, p. 6).

[3]Claimant argues that the ALJ introduced the following report post-hearing without notifying her. (rec. doc. 10, p. 6).

4

dust, fumes, odors, chemicals, gases, and smoke. (Tr. 131).

**(7) Claimant's Mother's Administrative Hearing Testimony.** At the hearing on February 13, 2004, claimant was unrepresented. (Tr. 19). The following colloquy transpired between the ALJ and claimant's mother regarding claimant's right to counsel:

> ALJ: Now, the first thing we need to discuss here this afternoon, ma'am, is your right to Counsel. I see that you don't have an attorney or other rep with you –
>
> WTN: No, sir.
>
> ALJ: – and of course that's perfectly okay, because none is required. But I need to make sure on the record that you understand that if you wanted to have counsel, you could.
>
> WTN: Yes, sir. I understand.
>
> ALJ: Okay. Do you have any questions about that?
>
> WTN: No, sir.
>
> ALJ: Do I understand correctly then that you wish to waive or give up that right –
>
> WTN: Yes, sir.
>
> ALJ: – and go ahead and have me hear and decide –
>
> WTN: Yes, sir.
>
> ALJ: – the case? Okay. I'll accept that as a waiver.

(Tr. 19-20).

Debra Lovell testified that she was not claimant's biological mother, but she had full custody of claimant. (Tr. 21). She stated that when she got claimant, the child was malnourished and would not eat.

Claimant's mother reported that claimant had started Headstart in the fall, but was behind the other children. (Tr. 22). She said that claimant, who was 3 ½ years old at the time, was working at the pace of a 2 ½-year-old. (Tr. 22-23). Ms. Lovell testified that claimant was developmentally delayed in that she could not count to 10 and could not remember things. (Tr. 22-24). She also said that claimant had neurofibromatosis, which caused spots all over her body and could lead to cancer. (Tr. 23).

Additionally, Ms. Lovell reported that claimant was very moody. (Tr. 27). She stated that claimant fought with other children. She was also easily distracted and inattentive. (Tr. 27-28).

Ms. Lovell stated that claimant saw Dr. Ferguson once a year to have a checkup. (Tr. 24). She reported that claimant also saw an ophthalmologist and an ear, nose, and throat doctor to look for potential tumors. (Tr. 25-26). Claimant was not taking medication at that time. (Tr. 29-30).

**(8) The ALJ's Findings**. Claimant argues that: (1) the ALJ denied her due process of law by failing to obtain a valid waiver as to her right to representation, and (2) the ALJ failed to submit post-hearing evidence to claimant for review, comment, or objection prior to the decision. Because I find that the ALJ denied claimant her right to cross-examine the physician who prepared the post-hearing report and to present rebuttal evidence, I recommend that this case be **REMANDED** for further proceedings.

Claimant first asserts that the ALJ denied her due process of law by failing to secure a valid waiver of her right to representation. (rec. doc. 10, p. 4). It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). When a claimant is not represented by counsel, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.*, citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). However, to merit reversal of the ALJ's decision, a claimant who does not validly waive her right to counsel must prove that she was thereby prejudiced. *Id.*; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997).

The record reflects that the ALJ informed claimant's mother of claimant's right to counsel at the hearing. (Tr. 19-20). However, claimant contends that the ALJ failed to comply with the requirements of HALLEX I-2-65-2 (A) (rec. doc. 12, pp. 1-2), which provides as follows:

> The ALJ will open the hearing with a brief statement explaining how the hearing will be conducted, the procedural history of the case, and the issues involved. In supplemental hearings, the ALJ need only identify the case, state the purpose of the supplemental hearing, and describe the issue(s) to be decided.
> Generally, the content and format of the opening statement are within the discretion of the ALJ. However, if the claimant is unrepresented, the ALJ must ensure that the claimant is capable of making an informed choice about representation. For example, the ALJ should ask an unrepresented claimant the following questions on the record:
> 1. Did you receive the hearing acknowledgment letter and its enclosure(s)? (If not, the ALJ will provide the claimant with a copy and the opportunity to read the letter.)
> 2. Do you understand the information contained in that letter concerning representation? (If not, the ALJ will explain the claimant's options regarding representation, as outlined in the acknowledgment letter. Specifically, the ALJ will explain the availability of both free legal services and contingency representation as well as access to organizations that assist individuals in obtaining representation.
>
> \*\*\*
>
> Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will secure, on the record, the claimant's decision concerning representation. The ALJ will also enter into the record the acknowledgment letter and enclosure(s) sent to an unrepresented claimant only if the claimant elects to proceed pro se at the time of the hearing.

While HALLEX does not carry the authority of law, the Fifth Circuit has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). The record reflects that the ALJ did not comply with HALLEX since he failed to ask claimant's mother if she had received a copy of the hearing acknowledgment letter and did not discuss claimant's options concerning representation. However, the Fifth Circuit requires a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such failure will be permitted to serve as the basis for relief from an ALJ's decision. *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton*, 209 F.3d at 458.

In support of her argument that she was prejudiced, claimant asserts that the ALJ introduced evidence consisting of Exhibits 6F (Dr. Thompson's records) and 7F (Medical Source Statement) without advising her that the evidence had been placed into the record. (rec. doc. 10, p. 6). She contends that this deprived her of the opportunity to object to the introduction of the evidence or, alternatively, to request

9

a subpoena to compel the presence of the post-hearing report drafter for purposes of cross-examination. She stated that the ALJ's failure to advise her of such evidence violated HALLEX I-2-730, which provides, in pertinent part, as follows:

> A. When Proffer Is Required
> The Administrative Law Judge (ALJ) must proffer all posthearing evidence unless:
> - The evidence was submitted by the claimant or the claimant's representative and there is no other claimant to the hearing.
> - The claimant has knowingly waived his or her right to examine the evidence (See I-2-7-15, Waiver of the Right to Examine Posthearing Evidence.).
> - The ALJ proposes to issue a fully favorable decision.

Claimant also cites *Tanner v. Secretary of Health and Human Services*, 932 F.2d 1110 (5th Cir. 1991), in support of her argument that the ALJ's failure to submit this post-hearing evidence for review, comment, or objection prior to his decision was erroneous.[4] (rec. doc. 10, p. 6). In *Tanner*, the ALJ sent post-hearing written interrogatories to a vocational expert without notifying claimant's attorney. After the vocational expert issued a report, the ALJ sent a copy to claimant's counsel. In response, claimant's counsel sent a letter to the ALJ stating his objections to the interrogatories. Without addressing counsel's objections, the ALJ incorporated the expert's report into the record and issued a ruling rejecting claimant's benefits claim

---

[4]Claimant also relies on *Briscoe v. Secretary of Health and Human Services*, No. 85-0028 (W. D. La. December 7, 1987), an unpublished decision by the late Judge Edwin Hunter which is attached to claimant's brief. (rec. doc. 10-2, Appendix).

10

based on the expert's vocational conclusions. The Fifth Circuit held that the ALJ committed reversible error by relying on the post-hearing report to deny claimant's request for benefits without giving counsel an opportunity to cross-examine the vocational expert.

The Commissioner argues that *Tanner* is distinguishable because the ALJ here did not rely on the post-hearing report to find claimant not disabled. (rec. doc. 11, p. 5). However, while the decision does not reflect how much reliance the ALJ placed on the Medical Source Statement, the undersigned finds that claimant's counsel should have been given the opportunity to respond to the post-hearing reports. Given the complexity of claimant's neurofibromatosis, this might very well have affected the outcome of this case. Given that the violation of HALLEX I-2-730 is acknowledged by the Commissioner, to the extent prejudice is required, I find that claimant has shown prejudice due to the ALJ's placing of this post-hearing medical source statement into the record without giving claimant an opportunity to cross-examine the issuer of the report.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to give claimant an

opportunity to confront and cross-examine the issuer of the medical source statement, or to enable her to obtain a medical opinion from another expert of her choice. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN**

AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 5 day of December, 2005 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 12-5-05
BY: ab
TO: CMH
RFD